JOSEPH LEVY, Plaintiff in Error, *v.* THE PEOPLE OF THE
STATE OF NEW YORK, Defendant in Error.

Upon the trial of an accessory before the fact, the record of conviction of
the principal is sufficient proof *prima facie* of that fact, and that he was
properly convicted ; but it is not conclusive proof of his guilt as against
the alleged accessory, and the latter may controvert the propriety of the
conviction. The People are entitled to rebut his proofs thereon and to
give evidence *aliunde* of the commission of the principal crime.

Where, upon such a trial, after the record of conviction of the principals
had been given in evidence on the part of the prosecution, testimony was
received under objection and exception, tending to show the commission
of the crime by the principals. *Held,* that the question was simply as
to the order of proof, which was in the discretion of the trial court.

*Coleman* v. *The People* (55 N. Y., 81), distinguished.

The case against the prisoner was made up of circumstances, among them
the acts of the principals, so proved, the character of which gave ground
for inference of the prisoner's knowledge. *Held,* that in the reception
of such testimony the court did not exceed a wise discretion.

The indictment charged the prisoner as accessory to the crime of arson in
the first degree ; it charged that the fire was set by the principals in the
night-time, and burned the dwelling-house of K., in which he then was.
It appeared that the building was a five-story tenement-house, having
a common entrance in front and in the rear. The front entrance opened
into a hall-way, used in common, and the apartments in the several floors
opened into a common hall. The prisoner, with his wife, occupied three
rooms ; K., with his family, occupied three adjoining rooms ; there was no
direct communication between the rooms of K. and those occupied by the
prisoner ; the fire was set in the prisoner's rooms and burned portions
of them. *Held,* that the indictment was well drawn ; that the building was
a dwelling-house, and was the dwelling-house of K. within the meaning
of the statute defining arson in the first degree. (2 R. S., 657, § 9.)

*Dedieu* v. *The People* (22 N. Y., 178) ; *Quinn* v. *The People* (71 id., 561),
distinguished.

Also, *held,* that the reception of testimony that the prisoner conferred with
the principals after the fire was not error, especially in view of the fact
that the prisoner afterwards denied that he knew them at all.

As to whether a case is to be considered here as *res nova* under the provi-
sion of the act to enlarge the jurisdiction of the courts of sessions of the
city and county of New York (§ 3, chap. 337, Laws of 1855, as amended
by chap. 320, Laws of 1858), which authorizes this court in cases coming
from the general sessions to " order a new trial, if it shall be satisfied
that the verdict against the prisoner was against the weight of evidence,"
etc., *quære.*

(Argued February 26, 1880 ; decided March 9, 1880.)

ERROR to the General Term of the Supreme Court of the State of New York, in the first judicial department, to review a judgment affirming a judgment of the Court of General Sessions, in and for the city and county of New York, convicting the plaintiff in error as accessory before the fact of the crime of arson in the first degree. (Reported below, 19 Hun, 383.)

The indictment set out that one Abraham D. Freeman was the principal felon, and that he, with others, had been theretofore convicted of the offence in the commission of which the plaintiff in error was charged to have been his accessory. This offence was alleged to be the "wilfully * * * setting fire in the night time to the dwelling-house of one Isaac Koenigsberg, at a time when he (Koenigsberg) was within such dwelling-house."

. The conviction of the principal was proved by the production of the judgment record of the Court of Oyer and Terminer. After proving such conviction, the People were proceeding to give evidence tending to show the commission of the crime by the persons charged as the principals in the indictment forming part of the judgment record, when the counsel for the prisoner objected to such evidence, in substance, on the ground that the record was conclusive on the prisoner, and that the People were only to establish on this trial that he was accessory to the crime. The court overruled the objection, and allowed the evidence to be given, and the prisoner's counsel duly excepted. Evidence was then given tending to establish the guilt of the several persons named in the indictment contained in the record, the substance of which is set forth in the opinion.

It appeared that the building in which the fire was set was a five-story tenement house, known as No. 11 Ludlow street. The building had a common entrance in front from the street, and a like entrance from a yard in the rear. The front entrance led into a hall-way used in common by the tenants, and on the several stories of the building there were apartments consisting of several rooms with doors

opening into common halls. The prisoner had three rooms on the second floor of the building, in which he lived with his wife, having no other family. Isaac Koenigsberg occupied, with his family, consisting of his wife and two children, three rooms adjoining those of the prisoner. There was no direct communication between Koenigsberg's and the prisoner's apartments. The fire was set in the rooms occupied by the prisoner, and it burned to some extent different portions of those rooms, but no portion of the rooms occupied by Koenigsberg were burned.

The indictment against the principals charged the offence in terms similar to those of the indictment here.

Further facts appear in the opinion.

*John O. Mott*, for plaintiff in error. It is not necessary, on the part of the prosecution, upon the trial of an accessory, to enter in detail into the evidence on which the conviction of the principal was founded; the record of the conviction is sufficient against the accessory to put him upon his defense. (1 Russell on Crimes [8th Am. ed.], 42; *Commonwealth* v. *Knapp*, 10 Pick., 477; *Coleman* v. *People*, 55 N. Y., 81, 88.) Upon trial of an accessory after conviction of the principal, if the evidence shows, that the offence of which the principal was convicted did not amount to felony in him, or not to the species of felony with which he was charged, the accessory may avail himself of this and ought to be acquitted. (1 Russell on Crimes [8th Am. ed.], 41, 42; 3 R. S. [6th ed.], 949, § 2.) The rooms of plaintiff in error constituted a separate dwelling-house, and as at the time of the fire no human being was in that dwelling-house it was not the subject of arson in the first degree, but it was a "building adjoining to" the dwelling-house of Koenigsberg. (*People* v. *Gates*, 15 Wend., 159; *Quinn* v. *People*, 71 N. Y., 561; *Mason* v. *People*, 26 id., 200; *People* v. *Bush*, 3 Parker Cr. Rep., 556; *Shepherd* v. *People*, 19 N. Y., 543; *Woodford* v. *People*, 3 Hun, 315; *People* v. *Rose Butler*, 16 J.

R., 204; *Shepherd* v. *People,* 19 N. Y., 541; 3 R. S. [6th ed.], 929, §§ 9, 10; 1 Hale, 556; *Mason* v. *People,* 26 N. Y., 200; 1 Hawk, P. C. [7th ed.], 290, § 27; *Woodford* v. *People,* 62 N. Y., 117–126.) The court erred in allowing the prosecution to introduce evidence as to the plaintiff in error, conferring with his principals after the fire. (3 R. S. [6th ed.], 989, § 7.) There being no proof to sustain the first count, the court was bound in law to direct a verdict of acquittal. (*People* v. *Bennett,* 49 N. Y., 137; *Case* v. *People,* 6 Abbott's [N. C.], 151; *Shepherd's Case,* 19 N. Y., 537, 543; *Woodford* v. *People,* 62 id., 127.)

*Benjamin K. Phelps,* district attorney, for defendant in error. Statements made by the prisoner at the Essex street station-house, were admissible. (*People* v. *Rogers,* 18 N. Y., 9; *People* v. *Wentz,* 37 id., 303; *Murphy* v. *People,* 63 id., 590.) Though the direct proof of the prisoner's acts was confined to what he did after the fire, it was entirely within the province of the jury to infer therefrom what must beyond reasonable doubt have preceded. (*Gordon* v. *People,* 33 N. Y., 501.) The indictment correctly averred that there had been a setting fire to and burning of the " dwelling" of Koenigsberg. (3 R. S. [Banks' 6th ed.], 929; *People* v. *Blarcum,* 2 J. R., 105; *People* v. *Gates,* 15 Wend., 159; *People* v. *Orcutt,* 1 Park, 252; *Shepherd* v. *People,* 19 N. Y., 537, 543; *Dedieu* v. *People,* 22 id., 178; *Quinn* v. *People,* 71 id., 561.)

Folger, J. After a careful consideration of this case, and the points made for the plaintiff in error, we think that no error is shown in the judgment.

*First.* It was not error to allow facts to be shown on this trial that tended to prove the guilt of the principal. Doubtless the record showing the conviction of the principal is proof sufficient *prima facie* of that fact; and proof that he was convicted is proof *prima facie* that he. was properly convicted. But still, the question of his guilt of the offence charged is not

thereby put entirely at rest as against an accessory ; and the one charged as such may controvert the propriety of the conviction of the principal. Cases have arisen, in which the record of conviction of the principal was deemed not sufficient proof of his guilt, on the trial of the alleged accessory ; and it was ruled that it must be established by other means. (*Rex* v. *Turner*, Ryan & Moody Cr. Cas. Res., 347; 1 Lewin, 119; *Ratcliffe's Case*, id., 121.) A learned author has doubted, whether it is strictly in accordance with the principle respecting the admissibility of verdicts in evidence against third persons, and insists that the record of conviction of the principal, is not admissible in evidence of his guilt as against another charged with being connected with him in the crime. (2 Phil. on Ev. *49.) In this State, the doubt thus put forth has not prevailed ; for here it is said that the record is *prima facie* evidence of the principal's guilt, but is not conclusive. (Per SUTHERLAND, J., *The People* v. *Buckland*, 13 Wend., 592.) Yet, as it is not conclusive, and the prisoner may controvert it, and may show that the principal was not properly convicted, the People are entitled to rebut his proofs thereon, and make evidence of the commission of the principal crime, *aliunde* the record of his conviction. So that the question made here is but one as to the order of proof, which is in the discretion of the court trying the case. The admission of the testimony was not within the reprehension given in *Coleman* v. *The People* (55 N.Y., 81). It did not go to prove a crime upon the prisoner different from that for which he was on trial. It was not called out for one purpose colorable only, and used for another ; it was not idle and frivolous. We have not been able to find that it has ever been held, that where the principal has been tried first, the People are confined in their proof of his guilt to the record of his conviction. We see nothing in the decisions on this topic that leads to such a result ; but rather the other way. Nor is there anything in this case that asks for such a rule. Here it is plain that the case against the prisoner was made up of circum-

stances, some of which were of the acts of the principals, and had their force from the character of those acts, and as thereby giving ground for inference of the prior knowledge of the prisoner that they were to be done. He was to be convicted, if at all, on proof that he had induced or advised the principal crime. In the lack of direct evidence, the People had right to avail of circumstances to show that. And the proof of what the principals did, the manner in which they did it, the facilities which they had therefor, the directness and boldness shown in setting about it, their meeting with the prisoner so soon after it was done, were all parts of the circumstantial evidence against him. The detail gone into was needful to make the whole case intelligible to the jury, and to give the matters, in which the prisoner personally had part, their proper aspect. The Court of Sessions did not exceed a wise discretion in receiving the testimony.

*Second.* The indictment was well drawn in charging that the fire was set to and burned the dwelling-house of Isaac Koenigsberg. The averment was in accord with the facts as they afterwards came out. The indictment averred in the principal the crime of arson in the first degree, and the proof showed that it had been committed. The statute declares that the setting fire to or burning, in the night time, a dwelling-house, in which there shall be at the time some human being, is arson in the first degree. (2 R. S., 657.) And to put beyond doubt what is a dwelling-house, it declares that every edifice which shall have been usually occupied by persons lodging therein at night, shall be deemed a dwelling-house of any person so lodging therein. (*Ib.*) Here the proof is enough that the fire set by the principals did burn somewhat the realty ; so that the question on which *Dedieu* v. *The People* (22 N. Y., 178) was put is not here. The fire was set in the night time, within the four walls and under the roof of an edifice in which there was at the same time more than one human being, and which was usually occupied by persons lodging therein at night ;

and Koenigsberg was one of those persons. He did not occupy the whole of it. It was a house of many rooms. He had some. The prisoner had some. Other person or persons had some, it is likely. The rooms were all under the same roof, within the same outside and party walls, having the same way out of doors and the same halls and stairways, and each having internal communication with every other. In such case, though Koenigsberg was the tenant of but three of the rooms, and the fire was set and burned the realty only in other rooms, of which the prisoner was the tenant, the averment was well made, and the proofs upheld it, that the principal did set fire to and burn a certain dwelling-house of one Isaac Koenigsberg. So is the charge to the jury in *The People* v. *Orcutt* (1 Park. Cr. R., 252 [1851], per ALLEN, J.). So in *Shepherd* v. *The People* (19 N. Y., 537), where the prisoner owned the house that was burned, and it was laid in the indictment as the dwelling-house of Geyer, who occupied but two rooms in it, one of them to sleep in, it was held that the building was properly laid as the dwelling-house of Geyer. And it is noticed there, that the statute (*ubi supra*) declares that the building shall be deemed the dwelling-house of any person usually lodging therein; and it is said that it is necessarily implied therefrom that if several persons so lodge in the edifice, the indictment may name any one of them. It is true that there the rooms of Geyer were burned up, while here those of Koenigsberg were not; yet that fact is not brought into the consideration. The reason for the enactment is said to be the sufficient identification of the building, and that is all that the ends of justice require, to which result the name of any lodger might have been used. In *Dedieu* v. *The People* (*supra*), the realty was not burned at all, nor was fire set to it. There the indictment laid the building as the dwelling of one Asselin, who, like Koenigsberg, occupied separately apartments only, in the building. It is there said by DENIO, J., *obiter* it may be, that the house was properly enough laid as her dwelling; and the authority cited as strong enough

for that saying is 2 R. S., 657, § 9. In *Mason* v. *The People* (26 N. Y., 200), it was held that where, in a tenement house like that here, several persons live and use separate sets of rooms, each set may, for the purpose of an indictment for burglary into it, be laid as the dwelling of the tenant of it. This does not conflict with the other cases cited by us above. It is the statute that we have cited that makes a dwelling-house of every edifice usually occupied as a lodging-place, for the purpose of an indictment for arson. There can be no dispute that the building known as No. 11 Ludlow street, within which the fire was set and burned, was an edifice, a single complete edifice of itself, having its own four walls, its own roof, its own outer door, its own halls and stairways through which there was a common way of reaching all the rooms in it. It was under that roof and within those walls, and hence within that edifice, that Koenigsberg and his family usually did lodge, and within which, in the night-time, they were in fact, when the fire was set and did burn a part of that edifice. It matters not that it did not burn but a part of the edifice; it was a setting fire to the whole of it (*The People* v. *Rose Butler*, 16 J. R., 203); and to the part tenanted by Koenigsberg, as well as that tenanted by the prisoner. Nor is *Quinn* v. *The People* (71 N. Y., 561) in conflict. The main current of thought there is in accord. There is taken out of the force of the decision the case of rooms severed by a demise from the other part of a whole building, when there is no internal communication between them and it; and that was a case of burglary. Here, as we have seen, there was internal communication from every room to every other. The principal did set a fire which did burn the edifice within which Isaac Koenigsberg and his wife and children did usually lodge. The Revised Statutes make such an edifice a dwelling-house as a subject of arson in the first degree. The courts have held that an indictment is good which lays such a building as the dwelling-house of any one who occupies rooms in it, though he may not own it, or occupy all the rooms, and others may

occupy other rooms ; and have also held that proof of such facts, and that fire was wilfully set to or did burn a part of the edifice not occupied by that one, will serve to convict one indicted for arson in the first degree, the fire having been set by him.

It follows that the indictment and conviction of the principals here for that offence was good in law ; and that if the facts show the prisoner inducing them thereto, he was well convicted as an accessory before the fact.

*Third.* It was not error to take testimony that the prisoner conferred with the principals after the fire. That he was with them, served to show his knowledge of them. The closeness of his companionship, and the frequency of it, would show how intimate was his acquaintance. If close and frequent, it was inferable that it was not newly formed and dated back to a time before the fire. Besides, it was competent, in view of his denial afterwards that he knew them at all. It was an act in the prisoner's life, at the time of the occurrence with guilty participation in which he was charged, and it was competent to be shown to the jury. Though after the principal fact, it was not necessarily confined to that aftertime, in its power to give ground for inferences. It may be that no act of his after the fire would make him an accessory before the fact ; but after acts of his might be circumstances, according to the nature of them, to show guilty knowledge of purpose and inducement thereto before the fire.

*Fourth.* There was a request and refusal to charge that there was "no direct evidence   *   *   *   that the prisoner had in his possession evidence" of who set the fire. It must be conceded that this was not a clear proposition, in view of the facts of the case as they appeared when it was made to the court. The phrase "in his possession" indicates physical rather than mental control ; and yet as there was nothing in the case to show that there existed evidence of the physical fact of that kind, it might have served to perplex the court. The court might well have hesitated to declare that there

was not or that there was such evidence. It did well to leave the matter to the jury, to determine from their memory of what had been testified to. If the prisoner was not satisfied with that disposition of it, there should have been some explanation of the request, and a more explicit call upon the court for a ruling.

*Fifth.* The prisoner asked the court to direct the jury to acquit of the charge in the first count of the indictment, viz.: of being an accessory before the fact. This the court could not do, if there was evidence that would sustain a verdict of guilty thereof. So that the point made, that the refusal of the court so to do was error, finds an answer in our conclusion that the verdict was not against the weight of evidence, which is the subject of another point, and is afterwards considered herein.

*Sixth.* It was not error to refuse to charge that there was no evidence in the case that the keys used by the principals were those of the prisoner. There was no direct evidence, such as identification of them as the same would have been. There was room for inference that they were the same, from the fact that they fitted the locks on the prisoner's rooms, that there was no evidence that the prisoner had his own in his possession on that night, or that the principals had made attempt or had opportunity to fit false keys to those locks, from the fact that they were used with no hesitation, but with a boldness that did not look for hindrance from the tenant of the rooms, and from all the facts of the prisoner's connection with the men that had them and used them for such a purpose.

*Seventh.* The prisoner asks this court, in this case, to use the power given it by the act of 1855 (chap. 337, Laws of that year, p. 613) as amended by the act of 1858 : (Laws of 1858, chap. 330, p. 556.) By that act, this court, in cases coming from the General Sessions in New York, " may order a new trial if it shall be satisfied that the verdict against the prisoner was against the weight of evidence, or against law, or that justice requires a new trial, whether any

exception shall have been taken or not in the court below."
In *Wilke* v. *The People* (53 N. Y., 525), we stated (*obiter*,
perhaps), what we thought was meant by the words " against
law," and " that justice requires a new trial." We are not
called upon to apply to this case any power given by those
phrases. We are to act under the clause, " that the verdict
was against the weight of evidence." This was not a new
power in a court as distinguished from a jury; it was new
only as it was to be exercised by an appellate court which in
most cases was confined to questions of law, and to such of
those of law or of fact as had been raised by exceptions taken
at the trial. The phrase "against the weight of evidence"
was, therefore, known to the law when these acts were passed,
and rules had been declared for the manner of exercising the
power, which are applicable as well in criminal as in civil
cases. Unless a verdict is clearly and manifestly against the
evidence, the court will not set it aside: (*The State* v. *Fisher*,
2 Nott & McCord., 261.) The verdict must be presumed to
be right until the contrary appears, and should be sustained
by the court, if the evidence, by fair construction, will war-
rant that course. It is not enough that the verdict may
possibly be wrong, but that, after giving proper weight
to all the evidence, it cannot be right: (*U. S.* v. *Martin*,
2 McLean, 256.) It is doubtful, however, whether those
rules may be applied in this case. In *Ferris* v. *The
People* (35 N. Y., 125), it is said that under the acts of
1855 and 1858, the case comes to this court, and is to
be considered here as *res nova.* If this be so, we are to
look at the testimony and see if it brings our minds to the
conviction that the prisoner was guilty, as charged in the
indictment. In *O'Brien* v. *The People* (36 N. Y., 276), the
purpose of the acts would seem to have been looked upon as
not as broad as was declared in 35 N. Y. (*supra*). But as
our judgment upon the effect of the evidence in the case
before us is fully and readily in accord with the verdict
against the prisoner, we need not determine what is just the
rule for us to follow. The testimony is entirely uncon-

tradicted. There is no impeachment of witnesses. All that has been testified to must be taken as true. Whatever weight it has, that is against the prisoner. It is circumstantial wholly. It is clear that the three principals were guilty of the crime of arson; that they went to the rooms of the prisoner with no other object than to set fire there, in pursuance of a pre-conceived purpose. There is no direct proof that he took part in the formation of that purpose; and with all the espionage to which the principals had been subjected, there was no direct testimony as to his intimacy or acquaintance with them before the fire. It is plain, though, that they knew where his rooms were, and how they were to be entered; and from their direct approach to them, and unhesitating entrance into them, that they did not fear nor expect any hindrance from within. This could not have been, unless they had assurance beforehand that there would be none. Such assurance could come from none but him. Such assurance existing, there is a presumption too strong to be resisted that he counseled and induced the act done by them there. It is a circumstance that suits well with that, that they had keys which fitted the locks on the doors. There is nothing in the case that shows or hints of any opportunity or attempt to make false keys to those locks. If the keys were the true ones, they must have come to the principals from the prisoner. From all the facts in the case, there is nothing that gives an inference that they were not the true keys; and then the presumption is too strong to resist, that coming to the principals from the prisoner, he was assenting to and aiding the purpose for which they were to be used. The coincident absence from home of the prisoner's wife for the whole night, and of himself while the arson was committed, are significant circumstances, and concur with those that we have noted. There is nothing in the case to check the inference that these absences were contemplated and pre-arranged. The association of the prisoner with the principals so soon after the fire, for so many hours, until so late an hour, and on such intimate terms, not by accidental meeting, it seems, for he

sought one of them twice at the house of the latter, is a significant circumstance, to which great weight is given by his denial of knowledge of them, and their denial of him. This was most plainly false, and, there must have been a potent reason for it; and no other naturally offers itself than that there was fear that the truth known would lead to suspicion and proof of complicity. His conduct when left alone by them was strange. He hesitated to seek his home. He knocked at his own door, at which he had best right to enter unannounced. He showed no surprise at what he saw there, which, if innocent of a part in the planning of it, or uninformed of it by the principals in his fellowship of the night with them, would have been matter to astonish him. His subsequent conduct with the adjuster of loss, in company with one of the principals, is significant of complicity.

So we might go over all of the incidents in the case. They all point to the prior criminal knowledge of the prisoner of the guilty intention of the principals and to his concurrence therein. It is sufficient to say that a careful reading of the testimony satisfies us that there is the clear weight in the evidence that sustains the verdict of guilty

The judgment should be affirmed.

All concur.

Judgment affirmed.