WILLIAM S. WEATHERBY, PLAINTIFF IN ERROR, v. NEW-
FIELD SMYRNA RUG COMPANY, DEFENDANT IN
ERROR.

Argued June 27, 1910—Decided November 14, 1910.

1. A person who enters into the employ of another assumes to
   understand it, and assumes all the risks usually incident to the
   employment; and included in such risks are those arising in
   consequence of special features of danger known to him, or
   which he could have discovered by the exercise of reasonable care,
   or which should have been observed by one ordinarily skilled in
   the employment in which he engages.
2. Where the proofs will not support any other verdict than that
   directed by the trial judge, the direction is proper.

On error to the Supreme Court.

For the plaintiff in error, *Louis H. Miller* and *John W. Wescott*.

For the defendant in error, *John Boyd Avis*.

The opinion of the court was delivered by

TRENCHARD, J.   This writ of error brings up for review a
judgment entered upon a verdict directed for the defendant
at the Cumberland Circuit in an action brought by William
S. Weatherby against the Newfield Smyrna Rug Company
to recover damages for personal injuries.

At the trial, at the time the verdict was directed, the jury,
if it had viewed the proofs in the light most favorable to the
plaintiff, would have been justified in finding the following
matters of fact:

The plaintiff was an engineer in the employment of the
defendant company.   Whilst so engaged he was scalded and
burned as a result of the breaking of a defective steam pipe
attached to the boiler, which was used to clean the boiler by
"blowing off" and ejecting through the pipe by means of
steam the sediment and dirt that from time to time accumu-

lated in the boiler. The plaintiff had worked for the defendant company several years, first as a weaver, then later as a night watchman and assistant to the engineer, and then, after having worked elsewhere for a year or two, was hired by the company as an engineer. He had been in charge of the boiler as engineer for three weeks prior to the time of the accident. The apparatus that caused the injury consisted of a two and a half inch pipe running from the boiler through the wall to a "Homestead valve" on the outside of the building, to which valve were affixed other pipes connecting with a horizontal pipe about six feet long running just above the surface of the ground to a terminal point where the steam and sediment were discharged. For several years, while acting as night watchman and assistant to the engineer, the plaintiff used this or a like appliance "almost every night" for the purpose of blowing out the sediment. The pipe outside of the wall was in three sections, and they were put in position only when the work of "blowing off" was to be done. These sections were screwed together when in use, and unscrewed and put away when not in use. When not in use they were always stored under an arch of the chimney, in a place exposed to the weather. When the plaintiff hired as engineer it became his duty to keep the boiler clean, and in such work to use this or a like appliance of pipes. During the three weeks prior to the accident he used the appliance upon several occasions. On the day of the accident he procured and screwed the pipes together, and turned on the steam, when, by reason of the threads being "rusty and insecure," due to disintegration through exposure to the elements, the threads "stripped," allowing the pipes to part, whereby the plaintiff was scalded. Immediately after the accident it was seen that several threads of the horizontal section of pipe which had been screwed into the other section had been "stripped or pulled off," and that two threads that had not been entered were "rusty and insecure, and had been decreased from their original size by rust." The defendant company maintained a machine shop next to the boiler room in which were kept an adequate supply of two

and a half inch pipes and fittings and tools to cut a thread, and the plaintiff frequently cut pipe there.

The only assignment of error argued is that challenging the legal propriety of the direction of a verdict.

We think the direction was right.

A person who enters into the employ of another assumes to understand it, and assumes all the risks usually incident to the employment; and included in such risks are those arising in consequence of special features of danger known to him, or which he could have discovered by the exercise of reasonable care, or which should have been observed by one ordinarily skilled in the employment in which he engages. *Coyle* v. *Griffing Iron Co.*, 34 *Vroom* 609; *Western Union Telegraph Co.* v. *McMullen*, 29 *Id.* 155; *Foley* v. *Jersey City Electric Light Co.*, 25 *Id.* 411.

Iron pipes are obviously subject to rust and deterioration when exposed to moist air. That the "rusty and insecure" condition of the threads was an obvious defect, and one which the plaintiff, by exercising a reasonable degree of caution, would have discovered, is clearly shown by the proofs offered by him. It appears that the pipes used by him when hurt were the identical ones which he had used upon the several occasions when he had cleaned, or attempted to clean, the boiler during his employment as engineer. On each occasion he, personally, screwed them together, and, after using, unscrewed and placed them in a place where they were exposed to the elements. According to his proofs, the rusty and insecure condition of the remaining threads was readily observable immediately after the accident. In such circumstances, it cannot be doubted that a defect so easily seen would have been discovered by him had he used ordinary care in observing if the threads were disintegrating. The plaintiff therefore failed in his duty to use due care to observe the danger and to avoid it by substituting new pipe from the adequate supply at hand.

In *Coyle* v. *Griffing Iron Co.*, 34 *Vroom* 609, this court, in its opinion delivered by the present Chief Justice, said:

"Although the master is charged with the duty to his ser-

vant of providing reasonably safe and proper machinery and appliances for the latter to work upon, and of using due care in keeping such machinery and appliances in repair, and of making inspection thereof at proper intervals, the servant, who operates a machine or mechanical appliance is, on his part, also chargeable with certain duties with relation to such machinery and appliances. He must exercise a proper watchfulness in order to see that, in the course of its use, it does not become defective for want of repair and so more dangerous in its operation than it would otherwise be. And if the repairs needed are not such as should be made by him, his duty requires him to report the condition of the machine to his employer. And this duty becomes more imperative when personal danger to himself and others may follow from the continued use of the machine while out of repair. As a corollary to this rule, it follows that, where a machine becomes defective during use, and, consequently, more dangerous to operate, and such defect is an obvious one, which might have been discovered by the servant by the use of reasonable diligence, he is presumed to have taken upon himself the risks incident to its further use while out of repair, and if injury results to him from such use, the master is not liable."

Since the proofs would not have supported any other verdict than that directed by the trial judge, there was no error in the instruction complained of. *McCormack* v. *Standard Oil Co.*, 31 *Vroom* 243.

The judgment of the court below will be affirmed.

GARRISON, J. (dissenting). A verdict having been directed we must assume the case made by the testimony of the plaintiff's witnesses; a legitimate inference from that testimony being that the master was negligent in the inspection of the appliance furnished to the servant, I am unable to concur in the view that the danger and risk of using the appliance thus furnished were so clearly obvious to the servant that the question need not be left to the jury. To me it looks like an inference drawn by the court under such circumstances that the assumption that a court question was presented can rest

upon no other foundation than a failure to discriminate between the relative opportunities and duties of master and servant in the matter of inspection.

Masters and their appliances remain while servants come and go, and the opportunities of the latter for inspection are, at best, merely coincident with the performance of some piece of work they are set to do. The opportunity of the master on the contrary and his duty to inspect are constant and continuous; moreover, he may choose his time to inspect and may take his time in the inspection; the servant may do neither. If the age of an appliance, its history, the length of time it has been in use, the place of its storage, its repair or the reports that have been made respecting it have a bearing on the likelihood of its being unsafe, and they normally have, they are all known to the master, or ought to be, and are all unknown to the servant, or are likely to be. Upon the other hand, the servant, in some cases, notably in that of hand tools in constant use, has the better opportunity, and hence the greater duty of current inspection. For present purposes, however, the point is not to balance the relative opportunities and duties of master and servant, but to recognize that they are radically different. The notion, therefore, that because the unsafe condition of an appliance would have been discovered by the master, if he had not been negligent, it was obvious to the servant is fallacious in the extreme; yet not more so than the opinion that because, after an accident has happened, its cause is apparent to those whose attention is then concentrated upon its discovery, it was, therefore, before the accident, a danger that was obvious to the ordinary observation of one whose attention by the terms of his calling was concentrated upon the performance of the work he was set to do.

If these two fallacious ideas be eliminated there is no possible ground for holding in the present case that the inference as to what a reasonably observant servant would have discovered in his use of his master's appliance was one to be drawn by the court rather than by the jury.

I think that the testimony *pro* and *con* should have been submitted to the jury, and therefore vote to reverse.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VROOM, CONGDON, JJ. 9.

*For reversal*—THE CHANCELLOR, GARRISON, VREDENBURGH, JJ. 3.