THE MAYOR, RECORDER, ALDERMEN AND COMMON COUNCILMEN OF DOVER v. THE RICHARDSON & BOYNTON COMPANY OF DOVER, NEW JERSEY.

Submitted February 27, 1911—Decided June 19, 1911.

Defendant, a manufacturing company operating its plant at Dover, was charged by the declaration with unlawfully and fraudulently abstracting water from the public water supply of the town.    On rule to show cause—*Held*—

(1) That, assuming the evidence failed to show any specific quantity of water taken, the court would not have been justified in nonsuiting, as it was shown that some water was taken, and consequently a nominal verdict would have been justified.

(2) That the jury would be justified in finding as a fact that defendant corporation had authorized the opening of the valve connecting its pipes with the plaintiffs' mains if they believed that defendant's employes, under instruction from defendant's chief engineer and his assistant, had opened such valve so frequently and the acts had extended over such a long period, as to justify the inference that such acts had come to the knowledge of defendant and it had failed to put a stop to them if unauthorized.

(3) Under the charter adopted by the town of Dover (*Pamph. L.* 1884, *p.* 44) the town is entitled to maintain a suit of this character notwithstanding the creation of a board of water commissioners.

(4) The mere fact that the valve was opened with the knowledge or by the direction of defendant's chief engineer, or that water was taken each day to a large amount, will not suffice to charge the defendant as matter of law, under the pleadings in this case, with liability for the water so taken.

On rule to show cause.

Before Justices GARRISON, PARKER and VOORHEES.

For the plaintiffs, *Vreeland, King, Wilson & Lindabury.*

For the defendant, *Willard W. Cutler.*

The opinion of the court was delivered by

PARKER, J. The action is in tort. The first count in the declaration charges in substance that the defendant, having a manufacturing plant at Dover, which was connected by a branch pipe with a main water pipe of the Dover water plant, the flow of plaintiff's water through said branch pipe being prevented by a valve or gate, the defendant, well knowing the premises, without the license or consent of the plaintiff, but contriving and fraudulently intending to deceive, injure and defraud the plaintiff of large quantities of water and the value thereof, * * * unlawfully, fraudulently and deceitfully, and without the leave and license of the plaintiff, ordered and commanded its servants, agents and employes to open said valve or gate, and by means thereof obtained and received from the mains and water plant of the plaintiff large quantities of water of the value of $50,000.

The second count is substantially identical except that it charges that the defendant allowed and permitted its servants, agents and employes to open the said valve. And the third count, in similar form, charges that the defendant, by its servants, agents and employes in and about its business, and for its own use and benefit, unlawfully, wrongfully, fraudulently and deceitfully opened the said valve or gate and thereby obtained water, &c.

These counts are all traversed, and there are certain special pleas, the purport of which is not necessary for the purposes of the present decision.

The jury found a verdict in favor of the plaintiff as for the value of water taken, in the sum of $15,881.20.

The conceded facts are that the defendant company has a large manufacturing plant in the town of Dover, on which it has sunk wells and maintains its own pumping apparatus and

a large stand pipe holding one hundred and thirty-two thousand gallons and being something over one hundred feet in height; that it did own certain other lands with wells thereon, or available for driving of such wells, and conveyed these other lands to the town of Dover; the important consideration of such conveyance being that a connection should be made and maintained between the municipal water works and the private water system of the defendant company by means of a connecting pipe some six inches in diameter with a valve thereon, so that the Dover water could be turned on or off at will; that such valve should be kept habitually closed, but might be opened in case of fire in the defendant's works, and the town water freely used for the purpose of extinguishing such fires without charge.

Such being the situation, several witnesses for the plaintiff testified that they had formerly been in the employ of the defendant company as watchmen, laborers, or in similar capacities, and that under the direction of the chief engineer of the company, or his assistant, had, on many occasions, ranging over a period of several years, and when there was no alarm of fire, turned on the valve between the town and the defendant's plant for the purpose of filling the stand pipe; that this was done with more or less regularity throughout the period in question.

Another witness, employed in the city's water department, testified that he had observed or suspected the tampering with this valve, contrary to the agreement which formed the consideration for the deed, and had demonstrated, on a number of occasions, that it had been tampered with, by the fact that the wrench or key with which the valve was turned, and which was several feet long and had to be inserted into the ground in order to reach the valve, had been moved from its place, and that he had proved the change in position of this wrench when not in use by making chalk marks on the fence or wall against which it usually was rested; also that he had made marks on the iron plate covering the valve hole, and on the rim in which the plate rested, showing that the plate had been disturbed from its position.

Further evidence bearing on the quantity of water claimed to have been abstracted was given by two civil engineers, one of whom made tests of the amount of water flowing through the town's main on certain days in July, 1908, and again in August, 1909, and which seemed to show a decrease of over one hundred and thirty thousand gallons a day at the latter period. The significance of this testimony rests on the fact that in November, 1908, the defendant company was notified that the municipal authorities believed that it was taking water unlawfully, and that it would be held responsible for the same.

Another civil engineer made observations of the condition of the low service reservoir which was connected with the pipe in question through the town's mains, both before and after the notice, and made computations tending to raise the same inference.

With regard to the value of the water, the testimony was substantially that in small quantities its reasonable value was somewhere between two hundred dollars and three hundred dollars per million gallons, and for large quantities, from one hundred and fifty dollars to two hundred dollars a million gallons.

The claim made by the plaintiffs' attorney, just before the case went to the jury, was for one hundred and thirty-nine thousand gallons of water for each and every working day between April 5th, 1904, and November 14th, 1908, less the time the factory was not in operation, from one to three weeks each winter and from one to two weeks each summer, being one hundred and ninety-one million one hundred and twenty-five thousand gallons, at $150 a million gallons, or $28,530. The verdict was for somewhat over one-half of this claim.

It is first alleged in support of the rule that the court erred in refusing to nonsuit on two grounds, namely, that there was no evidence to justify a finding as to any definite amount of water taken, and that there was no evidence that any water was taken by authority of the defendant corporation. It is obvious that if the first claim be correct, it would not justify a nonsuit, because there unquestionably was evidence that some

water was taken, and at least a nominal verdict was recoverable.

The other point, however, demands more extended consideration. It involves the question as to whether the chief engineer and assistant engineer are to be regarded under the evidence as representing the defendant corporation, so as to make it responsible for their action in directing the opening of the valve if this was the fact; and if, such acts being shown, they are not to be primarily regarded as binding on the corporation, then whether it may be charged with knowledge and ratification of the practice by reason of its frequency and continuity. It seems to be unnecessary to decide the first point, because, under the ruling in *Dierkes* v. *Hauxhurst Land Co.*, 51 *Vroom* 369, decided by the Court of Errors and Appeals, the turning on of the water under the orders of these engineers and by these various employes, might legitimately have been found by the jury under the evidence to have been so frequent, so habitual, and extending over such a period of time, as that the defendant corporation would naturally, in the ordinary course of affairs, have become cognizant of it, and have forbidden it, if unauthorized. A nonsuit would therefore have been improper.

These considerations also dispose of all but one of the arguments urged by the defendant to support its claim that the court should have directed a verdict for the defendant, and which, with the exception just mentioned, are substantially the same. The excepted reason is that the suit will not lie in favor of the town of Dover because, by the act of 1884, page 44, and which it was claimed was accepted by the citizens of Dover upon a referendum, the right to collect for the value of the water was exclusively vested in the water commissioners provided for by that act. But we cannot assent to the soundness of this proposition, for our reading of the act leads to the conclusion that it was not the intention of the legislature in providing for these water commissioners to create a corporation invested with ownership of the water plant and of the revenue thereof, but simply to create a municipal agency for purposes of convenience in the financing and practical manage-

ment of the water plant. It is true that under the terms of this act the water commissioners are to fix the rates and send out and collect the bills therefor, but on the other hand there is no language constituting them a corporation or vesting them with ownership; and, on the contrary, there are provisions which plainly indicate that they are simply an agency; as, for example, the power to issue bonds, not of the water commissioners but of the town, and the further provision (section 14) that in case the receipts are less than the expenditures, the deficiency is to be raised by a tax levied by the town itself. Instead of being empowered to sue for unpaid water rents, the commissioners are empowered, by section 9, in case of delinquencies, to take the same proceedings for collection as the town has by law for collecting the expense of paving sidewalks. And it should be further noted that the present action is not in contract for the collection of water rents, but is in tort for damages for the fraudulent abstraction of water. We think it quite plain, therefore, that the suit was properly brought by the town.

Two questions relating to the evidence are presented: First, it is said that the court should not have admitted evidence of defendant's former employes as to turning on the water without showing the scope of their authority. This is answered by the ruling in *Dierkes* v. *Hauxhurst Land Co., supra,* because if their acts in turning on the water were so frequent and habitual as, under the principle laid down in that case, to justify a jury in inferring knowledge and ratification, the scope of authority was made evident by the acts themselves.

Secondly, that the testimony of the two civil engineers as to the difference in the amount of water flowing through the city main before and after the notification of the defendant, was incompetent without other evidence sufficient to show that the excessive flow at the time of the first observations could not be rationally accounted for in other ways. We shall deal further with this question in a moment. For present purposes it is sufficient to say that the evidence objected to was a legitimate link in a chain of proof which, if completed, would make all

the evidence competent, but which, if incomplete, might be of no value, and perhaps might justify a subsequent motion to strike it out; although we do not pass on this point.

The defendant further claims that the court illegally excluded evidence offered by it, and especially that it refused to go into the question of the cost of running the defendant's own pumping plant. The argument is this: If, as was claimed, the evidence showed that the defendant had plenty of good water in its own wells, that the steam from its general boilers operated the pump, that the pump was there on its own ground, of admitted capacity and could have been used to fill up the defendant's own stand pipe at the times when it is alleged the town water was used for that purpose, and that at insignificant expense to the defendant the temptation to abstract town water would be minimized, it would therefore be most unlikely that such an abstraction took place. We think that in this point of view the proof offered was legitimate, and that the evidence should have been allowed.

It is further alleged that the court erred in excluding evidence as to some additional consideration for the deed made by the defendant to the town. The objection was that it was incompetent. We do not think it was incompetent, because a proper consideration of the deed may be shown by parol. *Morris Canal* v. *Ryerson*, 3 *Dutcher* 457; *Silvers* v. *Potter*, 3 *Dick. Ch. Rep.* 539. But we fail to see how the evidence was material, and if immaterial, it was not error to exclude it.

The court charged, at the request of the plaintiff:

"2. That if the valve in the city main was opened by the defendant's employes with the knowledge and consent of Mr. Giese, or under his direction, and the defendant's stand pipe filled, the defendant is responsible."

We think this charge was too broad, because it amounted to a finding by the court that the knowledge and consent or direction of Mr. Giese, who was the chief engineer, was that of the company, and we are not willing to say that because Giese was chief engineer and because his duty, as testified, was to keep the stand pipe full by pumping from the company's wells, his consenting to or authorizing or directing the stealing of water

from the town of Dover, may be regarded as coming within the scope of his employment. We think it was for the jury to say whether or not the company had ratified and assented to such a practice because of the existence of such practice, if proved, and under the principle laid down.

The court also charged the jury:

"3. That if water was taken by the defendant's employes each day, or practically each day, to the amount of approximately one hundred and thirty-nine thousand gallons, and stored in the defendant's stand pipe, and this water was taken from the plaintiff's water mains, then the defendant is chargeable with notice and liable."

This we think was also erroneous, because it charged the defendant with notice of the stealing of this water, as a matter of law, if such stealing was found to be in effect a daily practice. However persuasive such facts might be to a jury on the question of notice, we do not think they turned this into a court question. It is quite possible that if the suit had been simply in trover, the question of the defendant's knowledge would have been immaterial, and that it might have been held for the value of the water because it had had the benefit of it. *West Jersey Railroad Co.* v. *Trenton Car Works Co.,* 3 *Vroom* 517. But such was not the theory of this case; for the declaration, which has been abstracted above, shows clearly that the plaintiff's claim was predicated upon a willful, intentional and fraudulent stealing of the town's water.

The court refused, when requested by the defendant, to charge that the plaintiff could not recover for more than one hundred thousand gallons of water a day. The request was based upon the language of the declaration, which alleged that the defendant took a large amount, to wit, one hundred thousand gallons of water per day. The rule, as laid down in *Steph. Pl.* (*Tyler ed.*) 284, is that "the pleader may in general allege any quantity and flow that he pleases (at least if it be laid under a *videlicet*) without risk from the variance in the event of a different amount being proved. But it is to be observed that a verdict cannot, in general, be obtained for a larger quantity or value than is alleged. The pleader there-

fore takes care to lay them to an extent large enough to cover the utmost case that can be proved."

This seems to support the request as made; but it is perhaps unnecessary to pass upon the point, as the case must go back for retrial on other grounds, and the declaration may readily be amended if plaintiff so desires.

The court refused to charge the fourth request of defendant, and this is alleged for error, but as the point was substantially covered by the fifth request, which the court did charge, the error, if any, was cured thereby.

The last ground is that the verdict was excessive and not warranted by the evidence. Our examination of the testimony satisfies us that this point is well taken. The plaintiffs' counsel undertakes to support this large verdict on the theory, which seems to be the only reasonable theory, that the jury found substantially a daily abstraction of water, to the extent of one hundred and thirty-nine thousand gallons for a period of two years. We do not think that the evidence supports any such claim. It will be noted that the flow of one hundred and thirty-nine thousand gallons is seven thousand gallons in excess of the entire capacity of the defendant's stand pipe, and when it is considered that the defendant's own wells and pump must in all probability have been doing something during this time, and that the evidence given by the former employes of the defendant is very far from indicating that the valve was opened every day, or that it remained open for any considerable part of the day when it was open, we are forced to the conclusion that the jury must have predicated their verdict in large measure upon the testimony of the two civil engineers and the figures they gave as to the difference between the flow before and after the giving of notice to the defendant company. This evidence, taken by itself, is not reliable as an indication of the amount of water taken by the defendant, because it disregards the possible elements of leaks between the low service reservoir and the pipe leading into the defendant's plant, and the consumption of water by some four hundred consumers who drew upon the same supply. No evidence whatever was produced to show the use of water by these other con-

sumers, while it did appear that there had been a considerable leak at one time during the period under consideration, and it is fair to suppose that other leaks must have occurred from time to time. The general proof therefore as to the amount of water that passed through the valve into the defendant's stand pipe was very far from being complete, and the judge's charge, in so far as it permitted the jury to infer a consumption of this large quantity of water from the testimony of these two witnesses, was too favorable to the plaintiff. In this matter of incompleteness of proof, the case is very similar to *Bayonne* v. *Standard Oil Co., post p.* 717.

For these reasons the verdict must be set aside and a new trial ordered.