*56 Vroom.*     State v. Fiore.

THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ANTONIO FIORE, PLAINTIFF IN ERROR.

Submitted September 1, 1913—Decided November 17, 1913.

1. On the trial of an accessory to a murder. the record of the conviction of his principal is competent *prima facie* evidence tending to prove that the murder which the defendant is charged with counseling and procuring was in fact committed by his principal. It is not conclusive, but is some evidence of the guilt of the principal which it is competent for the state to offer.

2. Where the defendant is on trial for procuring, counseling and abetting a wife to murder her husband, proof of continued illicit relations between the wife and the accessory is competent upon the question of the defendant's motive in urging the wife to kill her husband.

3. As it is required that the counsel of an accessory to commit a crime be communicated to the one who is to act as principal, proof that such instructions were given by the accessory to his principal, through the agency of a third person, selected by him for that purpose, is competent upon the question whether the criminal advice was communicated to the principal, although it was, and was intended by the defendant to be, orally communicated. Such communication is as efficient as if sent in writing, the only substantial difference in the methods being facility of proof.

4. It is sufficient if the criminal advice or counsel, given by an accessory with intent that it be followed, be communicated to the principal by word, act or deed.

On error to the Supreme Court.

For the defendant in error, *Louis Hood* and *Wilbur A. Mott.*

For the plaintiff in error, *Frank E. Bradner.*

The opinion of the court was delivered by

BERGEN, J.   This writ of error questions the legal propriety of proceedings which resulted in the conviction of the defendant of murder in the first degree.   The indictment contains three counts, the first of which charges, in the words of the statute, that Maddalena Ciccone and the defendant did kill and murder Leonardo Ciccone.   The second, that Maddalena Ciccone did kill and murder the decedent and that this defendant did procure, aid, abet and counsel her to commit the murder.   The third, that the said Maddalena Ciccone, knowing the same to be a deadly poison, mixed arsenic in coffee which she had prepared for the use of decedent, and administered the same to him, by means whereof his life was taken, and that this defendant, Antonio Fiore, "before the felony and murder aforesaid," did procure, abet and counsel the said Maddalena Ciccone to murder her husband.   It appears by the record that the defendants named in this indictment were given separate trials and that Maddalena Ciccone, who was the wife of the decedent, was first tried and convicted of murder in the first degree, and that thereafter this defendant was put upon trial during which the errors assigned are alleged to have occurred.

It is first urged for error that the trial court, over the objection of the defendant, admitted in evidence the judgment of conviction of Maddalena Ciccone, which it is insisted was irrelevant, and injurious to the defendant.   The claim made by the state was that the wife had administered to her husband poison which caused his death, and although the poison was administered when the defendant was not actually or constructively present, the crime was induced by his counsel and advice, whereby he became an accessory to the murder, of which he could not be convicted unless it appeared that his principal was guilty of the crime which he was charged with aiding, abetting and counseling.   To prove this the record of the conviction of the principal was offered and admitted.   That such record is competent *prima facie* evidence

tending to prove that the murder which the defendant is charged with counseling and procuring was in fact committed by his principal cannot be doubted. It is not conclusive, but is some evidence of the guilt of the principal which it was competent for the state to offer. 3 *Gr. Ev.,* § 46; *Levy* v. *People,* 80 *N. Y.* 327; 1 *Encycl. Ev.* 75, and notes.

The case of *State* v. *Brien,* 3 *Vroom* 414, which the defendant cites, has no bearing upon the point at issue, for the question there was whether a defendant could testify at the separate trial of his co-defendant. The court there held that the defendant was a competent witness, but under the circumstances of that case, his testimony could not be used against him, nor could the judgment of conviction or acquittal of his co-defendant be received in evidence either for or against him when his case came to trial. But that was an entirely different situation from the present case, where one of the elements necessary to the conviction of the accessory is the guilt of his principal. On this point the record discloses no error.

The next point urged is the admission of testimony tending to show illicit relations existing between the defendant and his principal. The defendant's counsel concedes that on the trial of a husband or wife for the murder of the spouse, evidence of unlawful relations is competent upon the question of motive, but urges that in this case motive was of no consequence. We are of opinion that motive was a relative element, because if the husband was killed an obstruction which might prevent, or was at least likely to interfere with, the continuance of the illicit relations existing between the co-defendants would be removed.

Objection is made to the admission of a conversation between Maddalena, the wife, and her daughter based upon the following circumstances. The defendant, being imprisoned, requested the wife of the deceased to come and see him, but instead of doing this she sent her daughter to the jail where she saw, and conversed with, the defendant. The daughter testified that the defendant instructed her to tell her mother to poison her husband, and that if she did not he would kill

her when he got out of jail, and that this she told her mother. The objection made to this is that while the conversation she had with the defendant would be competent, the repeating of the instructions to her mother was not. Assuming that the child carried the message to her mother as given to her by the defendant, and that question was left to the jury, the witness was a messenger used by the defendant to communicate his instructions to the mother, and it was as efficient a communication as if written. If, when the incitement to commit a crime is communicated to the principal orally by a third person, at the request of the defendant, proof of such communication to the principal, as requested and intended, be rejected, an easy method of escape from the responsibility in such cases would be provided. It is sufficient if the criminal advice and counsel given by an accessory with intent that it be followed be communicated to the principal by word, act or deed. As it is required that the counsel of an accessory to commit a crime be communicated to the one who is to act as principal, proof that such instructions were given by the accessory to his principal through the agency of a third person, selected by him for that purpose, is competent, although the communication was, and was intended by the defendant to be, orally communicated. Such communication is as efficient as if sent in writing, the only substantial difference in the methods being facility of proof.

The next point is that the trial court overruled a question put to Maddalena for the purpose of ascertaining whether counsel who defended her on her trial had told her that she would not have to go to the electric chair. In the record it appears that there was some discussion whether this was a privileged communication, and the court instructed the witness that under the law all communications which passed between her and her counsel were privileged, and that she did not have to state anything said to her by him. To this the witness replied "All right," and there the examination was dropped. No objection was made to the instruction given by the court to the defendant, nor could one well have been made by the defendant, because the ruling was favorable to

the contention which he was then making. After the foregoing reply by the witness the subject was not pursued. No error appears as a basis for this assignment.

The next objection rests upon the admission of the testimony of a Mr. Baldwin, a chemist, concerning the contents of a box containing rat poison. He was asked:

· "*Q.* Did you make an examination of the contents of 'that box?

"*A.* I did, sir.

"*Q.* And what did you find the contents to be?"

Here an objection was interposed by the defendant, based upon the claim that the box which contained the rat poison, charged to have been used by Maddalena to poison her husband, was thrown into an alley between two houses, and could not, or was not produced, and that the contents of another box was no evidence of the character of the material contained in the one from which it was claimed the wife had taken the poison administered to her husband. There was evidence that the rat poison contained in the box, the contents of which the wife administered to her husband, was of the same character as that which the witness had analyzed, and that the poison was a well-known article made in considerable quantities, put up by the manufacturers in similar boxes, one of which the wife had purchased, and that each contained about ninety per cent. of commercial powdered arsenic. The case shows that this poison was not prepared by the wife, but purchased as a commercial product which was always put up in the same kind of boxes and all contained the same amount of arsenic, and the purpose of this testimony was to show that this commercial preparation, a part of which was in the box sold to the wife, contained arsenic. The competency of this evidence cannot be doubted, and its reception was not error.

The next error assigned is the admission of certain letters, three in number, alleged to have been signed by this defendant, addressed and intended by him to be delivered to Maddalena Ciccone. There was testimony tending to show that two of them were written in the English language by Ralph

Rollo, a prisoner in the jail where this defendant was con-
fined. Rollo, who could speak and write the English as well
as the Italian language, testified that these letters were dic-
tated in Italian by the defendant and written in English
by Rollo, at the request of the defendant, because, as he said,
Maddalena could not read them unless written in the English
language; that the letters which he wrote were correctly
translated from Italian into English, and that he signed
them, one "Tommy Fuvell" and the other "Tony Farto;"
that both letters were addressed by him to "Mrs. Mary Cic-
cone," one at "Newark Street Jail," and the other "Essex
County Jail," and that he left both letters in the possession
of the defendant. It appeared from other testimony that
both letters were received by Maddalena through the mail.
The objection to their admission is based upon the absence
of proof that the defendant actually mailed, or caused them to
be mailed. It is of no consequence whether it affirmatively
appears that defendant mailed or caused them to be mailed,
for he procured them to be written, after which they were
left in his possession, and subsequently they were delivered to
the person to whom they were addressed, the envelopes bear-
ing the usual post-office stamping, indicating that they had
passed through the Newark post-office. The only reasonable
inference to be drawn from this is that the defendant, hav-
ing the letters in his possession, caused them to be mailed
with the expectation that they would be received, as they
were, by the addressee. These two letters were properly ad-
mitted in evidence.

The other letter was delivered by the defendant to one
Millie Ceretta, who was confined in the same jail with the
defendant. When she was asked whether the defendant gave
the letter to her, she answered: "Well, when I was at the
altar he was kneeling down, I was kneeling down, and he
throwed it on the side of my dress and I picked it up and
when I went into the ladies' apartment I had it read—the
colored woman read it to me, and then I put it in my cell
in the box." She further testified that at this time Mrs.
Ciccone was not in the jail, although she had been, but that

the second time she was brought to the jail the witness gave the letter to her. At the time this letter was given to Maddalena, the murder had been committed, and no proof appears that this defendant wrote or caused it to be written. The court admitted this letter for the purpose of showing defendant's intention or state of mind. A reading of this letter shows that the defendant did not at the time this letter was written, if he wrote it, know that the murder had been committed. The objection urged is that this letter is not an admission, nor evidence of any act on the part of the defendant, and also that there was no proof that he wrote it or caused it to be written. On the latter point we are of opinion that if the defendant had this letter in his possession and gave it to his fellow prisoner in order that it might be delivered to Maddalena, he adopted the contents with the intention that it should be delivered to the person to whom it was addressed.

The court instructed the jury that this letter could not be considered by them as any evidence of counseling or procuring the commission of the crime, because it was not delivered until after the crime had been committed, but if the jury believed that it was made under the supervision and direction, or with the knowledge and consent of the defendant and that he knew its contents, it was evidence of his intention and his condition of mind towards the decedent. We think that this letter was properly admitted. It was apparently written before the crime was committed, although not delivered until afterwards, but it was competent evidence in support of the truth of the story told by the child regarding the communication which the defendant sent through her to her mother, for it counseled the killing of the husband, and also displayed his evil intent. This evidence was also competent as tending to show the motive actuating the defendant in advising the wife to kill her husband.

The next point made is that the court improperly admitted in evidence a complaint made under oath to a justice of the peace, who testified that the deceased made the complaint against his wife and this defendant charging them with adul-

tery, but on cross-examination admitted that he did not know the decedent, but that the person who made and signed the complaint told him he was Leonardo Ciccone. For the purposes of this case it is quite unimportant who actually made the complaint. The fact was that a written complaint was made by some one that this defendant and Maddalena, who was the wife of Leonardo Ciccone, were guilty of adultery, and it also appears that they were both arrested for this offence, and that this defendant knew that he was charged with committing the crime of adultery with the wife of the person he afterwards advised her to kill, and apparently, so far as this record shows, the defendant supposed that the husband had made a complaint against him, but whether he had or not, if the defendant thought he had, it would be some evidence in support of the motive which the state claims induced this crime.

The next point pressed is that the state was permitted to recall a witness to testify to a description of some of the letters, the ground of objection stated in the brief of counsel being "because the witness had testified to the conversation; had been fully cross-examined, and ought not to have been permitted to explain his former testimony." The record shows that after one witness had been examined for the defendant counsel for the state announced that he desired, then or at some convenient time, to recall the witness to ask him a question or two about a matter that he had omitted when he was on the witness-stand. This was a matter entirely within the discretion of the trial court, and the record discloses no abuse of such discretion. There is no merit in this objection.

The next point is that the court refused to permit the defendant to testify to a conversation with Mrs. Massina concerning a quarrel between the decedent and his wife. This was merely hearsay and properly excluded.

The next error urged is that the defendant was asked a question on cross-examination whether, if when he knew that his co-defendant was free from jail on the second or third day of March, he was not surprised six weeks after when he was taken to "murderers' row" to find that she was in jail again. The objection is to the use of the words "murderers'

row." This objection is frivolous and not worthy of consideration.

It is also urged that the court erroneously refused the jury an inspection of the jail. Such a proceeding is within the discretion of the court and the refusal was not an abuse of it.

Another point made is that the trial court denied a motion in arrest of judgment. It is argued that the judgment should have been arrested because of the form of the verdict which it is claimed was rendered in a form different from that shown in the record. But a motion in arrest of judgment must rest upon some legal error in the record, and not upon any question of fact, and this record shows that the judgment is in due form, that is, that the jury rendered a verdict that the defendant was guilty of murder in the first degree, and all we have before us is the record which is apparently in due form. No error appears in this record which would justify an arrest of judgment upon the ground urged by the plaintiff in error.

Objection is made that the court improperly charged the jury that if they believed "from the evidence beyond a reasonable doubt that this defendant sent the alleged message by Annie to Mrs. Ciccone, that is an essential and material fact in the case." The complaint made is that this was not a response to the third request to charge which was: "If the jury have doubt for which they can give to themselves an adequate and satisfactory reason whether the defendant sent a message to Mrs. Ciccone by Annie to get poison and give it to her husband, they must give the defendant the benefit of that doubt." This was not a proper request, because the jury may have a doubt for which they cannot give to themselves an adequate and satisfactory reason. All that is required is a reasonable doubt of the guilt of the defendant. The court charged the jury that it was the duty of the state to overcome the presumption of innocence by evidence showing beyond a reasonable doubt the guilt of the defendant, and then instructed them that a reasonable doubt "was that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that con-

dition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge," and that it must be "a certainty that convinces and directs the understanding and satisfies the reason and judgment of those bound to act conscientiously upon it." The defendant suffered no injury from this ruling.

The next point relates to the refusal of the court to charge as requested that in "considering the evidence in the case the jury may draw inferences from facts which have been proved, but must not draw inferences from other inferences." This subject is dealt with at considerable length in 1 *Wigm. Ev.*, § 42, and need not be here repeated. In *Dierkes* v. *Hauxhurst Land Co.*, 51 *Vroom* 369, 377, this court held that a course of practice by one acting as agent would justify an inference that the employer knew of it, and from this inference of knowledge, coupled with continuance of agent's acts, a second inference could be drawn, namely, that the employer had not forbidden it, and had tacitly consented to it. It is proper to say that in this case counsel does not point out in his brief any foundation for this request, and so far as we are able to discover, none exists, but even if it does, there was no error in refusing the request as made.

The next point is that the court refused to charge that the testimony of Mrs. Ciccone should be considered with very great caution, and not accepted by the jury unless satisfied to a moral certainty that she is fully corroborated by the other evidence in the case. This request does not embody the rule in such cases. It is not necessary that the jury shall be satisfied to a moral certainty that a witness is fully corroborated. The court charged the jury that they had a right to accept her testimony if, in their judgment, the testimony was credible and worthy of belief, and that we think complies with the rule in such cases. The court also instructed the jury that in considering the weight to be given to her testimony, they might take into consideration her great interest in testifying and all of the circumstances surrounding her condition as a convicted criminal. There was no error harmful to the defendant in refusing this request.

It is next urged that there was error in the refusal of the trial court to charge as requested as follows: "Unless the jury is satisfied that the state has proved beyond a reasonable doubt that Leonardo Ciccone made a complaint against the defendant, charging him with adultery, and that the defendant knew that such charge had been made against him at the time of the alleged sending of the message from the jail to Mrs. Ciccone to poison her husband, they cannot infer that he had any motive arising out of the charge of adultery, and therefore cannot infer that he probably sent the message because he had been charged with adultery." As we have said in an earlier part of this opinion, it is not important nor required that the complaint should have been actually made by the husband against the defendant, if he supposed or had reason to believe that it was. That the defendant knew that the complaint purported to have been made by the deceased appears from his testimony, for he admits that on the 13th day of February, 1912, the day the complaint bears date, it was read to him, and the complainant's name as stated therein was that of the deceased. In dealing with this point in his brief, counsel for defendant urges that the charge which the court did make does not cover the vital point which is that there is no proof that the decedent actually made the complaint, and therefore the request should have been complied with. The part of the charge which the defendant claims does not cover the vital point is a mere recitation of the facts which the court stated were claimed to have been proven by the state, namely, that the decedent left his wife because of her adultery, and that he caused both his wife and the defendant to be arrested and sent to the county jail upon that charge, and that the defendant then being in jail facing the charge of adultery and desiring to avoid it and enjoy the person of his co-defendant, urged the killing of the decedent to get him out of the way. This is a mere statement of what the state claimed to have proven, and if it was true, then the defendant had been arrested on a charge of adultery, and thereafter urged the killing of the person who

was responsible for the complaint, as the defendant understood. The request was properly denied.

We have examined the other points argued and find nothing in them requiring further consideration, and therefore the judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ. 13.

*For reversal*—KALISCH, J. 1.