STATE OF WEST VIRGINIA *v.* JESSE BLAIR *and* CARY BLAIR

(No. 7940)

Submitted October 9, 1934.   Decided November 20, 1934.

*E. F. Scaggs* and *Chas. L. Estep,* for plaintiffs in error.
*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

LITZ, JUDGE:

Defendants, Jesse Blair and Cary Blair (brothers), were tried, convicted and sentenced to life imprisonment, upon a joint indictment charging them with the murder of Hawk Bishop.

The prosecution contends that defendants left the home of their father, Joe Blair, on Harts Creek, Logan County, in company with Bishop about five-thirty P. M., October 8, 1933, going down the creek in an automobile owned and driven by Bishop; that all three were drinking and quarreling; that the car was stopped numerous times enroute for the purpose of obtaining liquor or for other reasons before reaching the point (two and one-half miles from the Blair home), where, about seven-thirty, Bishop was shot and instantly killed in the road

by one of defendants, aided and abetted by the other.

Defendants deny that Cary Blair accompanied Jesse and Bishop, or that Jesse was drinking, and insist that immediately before the tragedy, Bishop stopped the automobile to avoid striking an unidentified pedestrian who promptly censured him for negligent driving; whereupon, Bishop alighted from the car with a knife in his hand as if to attack the stranger and was shot by the latter before Jesse could reach the ground. Briefly stated, Cary Blair relies upon an alibi, and Jesse avers that the crime was committed by an unknown person whom he was unable definitely to describe.

The evidence of the state, indicating the number and conduct of the parties in the car and at the scene of the crime, follows:

John Dalton, who lived one-half mile below the Blairs, testified that the automobile stopped in the road about 26 steps from his house; that he observed Jesse, Cary and Bishop in the car; that they were arguing about who should drive and impressed him as being intoxicated.

Mrs. Ike Collins, who lived about one mile below the Blair home, says the automobile stopped in front of her house while she was milking; that Jesse got out, but Cary and Bishop remained in, arguing as to which should drive; and that, after finishing milking she returned to her house, and, fearing they were drunk and would attempt to come in, turned the lights out.

Mrs. W. M. Tomblin, who lived a short distance above the scene of the tragedy, testified that soon after the car stopped, she heard an argument and saw one man knocked down before the shot was fired; that three men were at the car, and she recognized the voice of Jesse Blair; that after the shooting one of the men went up, and another down, the creek; and that Jesse came to her house about fifteen minutes later inquiring for her husband.

Mrs. Jim Mullins, who lived along the road just below the place of the crime, testified that she went to her back

door when the car stopped; that she heard arguing and recognized the voice of Jesse Blair, who came soon after to her home, requesting her opinion as to whether he was drunk.

Eloise Webb, traveling in an automobile behind the Bishop car, testified that she saw a man in front of the latter car who disappeared at her approach; and that Jesse Blair stopped the automobile in which she was riding a short distance beyond the Bishop car, at which time she realized the first man she had observed was Cary Blair.

Having concluded, after a thorough consideration of the record, that the issues of fact were justifiably submitted to the jury, no useful purpose can be served by further detail of the evidence for the state, or the testimony relied on by defendants, which consists mainly of the testimony of Jesse Blair and a number of other witnesses tending to establish an alibi for Cary Blair.

Counsel for defendants asserts that the evidence, though sufficient to convict them, does not warrant a finding of murder in the first degree. This argument is predicated principally upon the fact that an open knife belonging to deceased with blood on the back of the blade was found in his partly closed right hand some time after the tragedy. The jury may have concluded, from the evidence, that the knife had been removed, after the homicide, from his pocket where it might have come in contact with blood from the gunshot wound.

The point most seriously stressed for reversal involves the giving of an instruction for the state, as follows: "The court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that the defense of an alibi was not interposed in good faith, or that the evidence to sustain it is simulated, false and fraudulent, then this is a discrediting circumstance to which you may look, in connection with all other evidence in determining the guilt or innocence of the defendant." Opposing counsel would justify and condemn the instruction by decisions of other states, many of which are annotated in 14 A. L. R. 1426, and 67 A. L. R. 122.

Whether it tends to disparage the defense of alibi, as urged by counsel for defendants, it does, in our opinion, violate the rule, firmly established in this state, strictly limiting the consideration of the evidence to the province of the jury. "The law is peculiarly jealous of any encroachment by a trial court on the province of the jury, who are the exclusive judges of the weight to be attached to the evidence of any witness, and *it is error for a court in the trial of the case to intimate any opinion in reference to matters of fact which might in any degree influence the verdict.* State v. Thompson, 21 W. Va. 741; State v. Austin, 93 W. Va. 704, 117 S. E. 607." Ball v. Wilson, 98 W. Va. 211, 127 S. E. 22. "It has been held proper to instruct the jury that an unsuccessful attempt to prove an alibi, in a criminal case, is a circumstance to be weighed against the defendant. The propriety of such an instruction, especially in those jurisdictions which scrupulously uphold the independence of juries, may be doubted; since the weight to be attached to this circumstance is exclusively for the jury, and where they receive such an admonition from the bench, they are liable to give undue weight to it." Thompson on Trials, section 2442. The instruction is also erroneous in that it does not restrict the effect of an unsuccessful attempt to prove an alibi to the charge against Cary Blair.

The judgment of the circuit court is reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*