STATE OF WEST VIRGINIA *v.* JAKE WALLACE

(No. 8408)

Submitted October 14, 1936. Decided December 15, 1936.

*B. J. Pettigrew* and *Dale G. Casto,* for plaintiff in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

WOODS, JUDGE:

The defendant, Jake Wallace, was tried, convicted and sentenced to the penitentiary for eight years by the intermediate court of Kanawha County, under a simple larceny indictment, on the charge of receiving and concealing a diamond ring, knowing or having reason to believe the same to have been stolen. The case is here on review from a judgment of the circuit court denying a writ of error.

Wallace, a duly licensed pawn broker, has been engaged in business in Charleston for over twenty years. As such broker, he is required by city ordinance to furnish information to the City Police Department, on an approved form, of all articles received from persons who have come to his shop for the purpose of either selling or pawning such articles; and to stand ready to state facts concerning such transactions.

The testimony introduced at the trial in connection with the exhibition of the ring was to the effect that the diamond was approximately three-eighths carat in weight, defendant describing it as 31 to 32, and Mr. Eisensmith, jeweler, as 38 points.

The ring, which was the property of Mrs. A. W.

Garnett, was taken from her residence in the east end of Charleston on November 19, 1935, by one Howard Tomlin, who, under the name of Jack Lowe, was house cleaning for Mrs. Garnett. The ring was left by Tomlin at defendant's place of business on November 22d. On the following day, Mr. Garnett reported the loss to Trooper Dupuy, at Headquarters, Department of Public Safety. Dupuy, after getting such information as he could from Garnett, made the following notation for his records: "The missing ring is of white gold type with about a half-carat diamond set in the center and a small diamond chip on each side of the set. It is either a five or a five and a quarter size." Thereafter, Trooper Morgan, of the Department of Public Safety, after checking pawn shop reports on file at Charleston Police Department for the sale or pawn of diamond rings, went to the defendant's shop and inquired concerning a diamond ring, the stone of which he described as being anywhere from a half to three-quarters of a carat, etc. Trooper Dupuy, on December 5, 1935, inquired concerning the stolen ring, stating, among other things, "that possibly the larger stone was one-half carat in size." On a later trip, on a different mission, Dupuy again inquired concerning such a ring. On each of the foregoing occasions, Wallace stated that he had no such ring in white gold mounting, but that he had a yellow gold ring of the description given. Neither of the foregoing officers requested to see Wallace's stock of rings. Howard Tomlin was arrested on December 12, 1935, by the city police on a theft charge in another part of the city. Investigation was made to see if Tomlin had had any connection with recent thefts in the east end. And shortly thereafter the ring, which had been brought into defendant's place of business by Tomlin, was turned over by the defendant to E. N. Shuck of the City Police Department. Shuck and Dan Smith, after examining the ring, and having doubts as to whether it met the description they had of the Garnett ring, finally decided to present the same to Mrs. Garnett for inspection. The latter identified it as her ring, Wallace, upon request of the City Police Department, went to the city building, where Tomlin was being

held, and identified him as the person who brought the ring into the pawn shop. Some days later, Wallace was requested to go to Headquarters of the Department of Public Safety, and in response to questions propounded by Trooper Dupuy, stated that he had the ring, which had been identified as the property of Mrs. Garnett, in his possession at the times that Troopers Morgan and Dupuy inquired concerning the same; and, further, explained the transaction between himself and Tomlin.

The first point of error is that the defendant could not be convicted of receiving or concealing stolen goods knowing them to have been stolen, under an indictment for simple larceny.

All the authorities agree that at common law the receiving of goods, knowing them to have been stolen, was a distinct substantive offense. 53 C. J. 502. And, under our statute (Code 1931, 62-2-24), "A count for receiving stolen goods or for embezzlement may be joined with a count for larceny, in the same indictment." Also, another section (Code 1931, 61-3-18) provides: "If any person buy or receive from another person or aid in concealing, or transfer to another person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted." In *State* v. *Goldstrohm*, 84 W. Va. 129, 99 S. E. 248, this Court, in discussing the similarity of the offenses of larceny and receiving stolen goods, stated: "If he is indicted for a simple larceny and upon the trial it appears that he did not actually steal the property but did receive it with knowledge of the theft, he is nevertheless guilty of larceny and amenable to the same penalties." The cases of *Com.* v. *Price*, 21 Gratt. (Va.) 846, and *State* v. *Halida*, 28 W. Va. 499, are cited in support. "In other words", the court continues in the *Goldstrohm* case, "upon an indictment simply charging larceny the state may show * * * that the subject of the larceny was received with knowledge that it was stolen." From the foregoing it would appear that the indictment was sufficient.

Wallace's business is recognized as a legitimate one. So, in the absence of a showing that he dealt with Tomlin, knowing him to be a thief, or under circumstances indicating that the ring was stolen property, the former cannot be charged with knowledge of the stolen character of the property.

The state would uphold the judgment on the theory that the defendant purchased the ring for $4.00, and that he denied possession thereof, under a subterfuge that it had not been adequately described. Although inadequacy of amount paid is a circumstance to be considered on the issue of guilty knowledge, it of itself is not necessarily controlling. And as to defendant's denial of possession of a ring of the description given him by Troopers Morgan and Dupuy, we are of opinion that the same is entitled to little, if any, weight, in view of the discrepancy in weight of the stone, especially when a request to examine defendant's stock of diamond rings would likely have been granted.

The evidence of members, and former members, of the City Police Department, is, in the main, to the effect that Wallace had cooperated with, and actually aided, them in the detection of crime. And, in connection with the Garnett ring theft, E. N. Shuck, for thirteen years a member of the City Police Department, testified that the same was recovered, and the actual thief identified, through information furnished by the defendant.

This court cannot give its assent to the foregoing conviction on the evidence detailed in the record. As discussed in conference, there is another rule to follow where the man who is charged with crime is operating a legitimate business, other than where he is the real thief. In other words, it must be shown that actual knowledge had been brought home to him that the seller of the article was the thief or that the property had been stolen. We do not think that this rule has been met by the evidence of the state.

While Tomlin did say that he told defendant that the ring was "hot", meaning that it was stolen property, he

made another statement to the opposite effect. We are therefore permitted to disregard his statement on this issue. It is true that a man may be convicted on the statements of an accomplice. But with Tomlin's evidence out of the case, we have nothing except the statement of Wallace. This statement in connection with his acts in aiding the public authorities, is sufficient to carry the burden he took under the law of the case. From a careful examination of the evidence, we are of opinion that it is not sufficient to support the jury verdict.

Our discussion of Tomlin's testimony calls up a third assignment of error, relating to the remarks of the court with reference thereto. In the following colloquy in the presence of the jury, the court definitely gave the jury his opinion as to what the witness said with reference to the disposition of the ring:

"The Court: He said he sold it to him.

Mr. Casto: He also said once that he pawned it, your Honor.

The Court: His evidence was that he sold him the ring. Do not misquote the witness.

Mr. Casto: Do I understand that I cannot show that he did say at one time he took the ring there to pawn it? I have a transcript of his evidence here.

The Court: I say that you should not misquote the witness is all.

Mr. Casto: But can I not quote Tomlin's testimony? He has said both.

The Court: The Court did not say that. The Court simply asked you to quote the witness correctly.

Mr. Casto: I object to the remarks of the Court, and ask the court to instruct the jury to disregard them.

The Court: No, the Court will not so instruct the jury. The Court is calling your attention to the fact that you did not quote the witness correctly. (Exception.)"

"Remarks made by the trial judge in the jury's hearing in making rulings will have the same effect as formal instructions; and the judge must be careful in his conduct, of the case, that he says and does nothing in the presence of the jurors, while the case is progressing, which can be construed to the prejudice, either of the prosecution or of accused. It is error for him to express, directly or indirectly, by words or by conduct, in the presence of the jurors, an opinion which discriminates against or points to the guilt of the accused, or to make a statement which tends to discredit or prejudice accused with the jury." 16 Corpus Juris, 827. This court recently said in *State* v. *Hively*, 103 W. Va. 237, 136 S. E. 862, that "Under the practice in this State, the trial judge should express no opinion on the testimony, either directly or by innuendo." Also, in *State* v. *Willey*, 97 W. Va. 253, 125 S. E. 83, it is found that "Remarks of the trial judge, in the presence of the jury that such proffered evidence is immaterial to the issue, constitutes prejudicial error." So, the court is of the opinion that the remarks of the honorable court gave to the jury an abnormal view of the evidence. Whether the proper intendment of the colloquy is given, doubtless the jury were misled by the remarks of the court. We must emphasize it as error.

For the reasons heretofore stated, the judgment of the intermediate court is reversed, the verdict of jury set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*