# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-1312** (Webster County 13-F-13)

**Amanda York,**
**Defendant Below, Petitioner**

**FILED**

April 24, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Amanda York, by counsel Daniel R. Grindo, appeals the order of the Circuit Court of Webster County, entered November 14, 2013, that denied her motion for a new trial and sentenced her to a term of incarceration following her conviction on three counts of voluntary manslaughter and one count of conspiracy to conceal a deceased human body. Respondent, the State of West Virginia, by counsel Christopher S. Dodrill, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 27, 2012, petitioner and an acquaintance, Denise Coates, quarreled. Later that afternoon, Denise Coates, Lamar Allen, and Dustin Brown drove to the residence of petitioner and her husband, Michael York. At some point after the three visitors arrived, petitioner's husband went inside his residence, retrieved a four-round .30-06 rifle, and returned outside. He then shot Lamar Allen in the chest, shot Denise Coates once in the chest and twice in the back, and shot Dustin Brown once in the side and twice in the back. Petitioner's husband reloaded his four-round rifle at least once during the shootings. All three victims died at the scene. Thereafter, petitioner and her husband attempted to conceal Dustin Brown's body by tying it to the back of an all-terrain vehicle with an extension cord and dragging it up a hill. However, the plan failed when the extension cord broke. Petitioner's husband then fled the scene in his car.

After her husband left the scene, petitioner called 911 and told the authorities, "I shot some people. . . .Yeah they were coming in and I couldn't stop 'em and it was me and the baby here." The 911 operator contacted the police and then called petitioner to check on her and her child, and to let her know that police officers were on their way. During this second call, the 911 operator asked petitioner whether she had a gun during the shootings. Petitioner replied, "Yes I had a gun when I, I came out of the house."

1

Petitioner made two more statements to police after they arrived at her house. During the first of these statements, petitioner said she had been in an altercation with Denise Coates earlier in the day:

> Okay well I was over at our friends . . . , me and my husband and my daughter were. And we were visiting. And[,] all of a sudden Denise [Coates] came over ah, she was getting something . . . . Um, and she just started going off at me. And I mean just right up in my face and in my husband's face and I kept telling her to just go, we're not fighting, this is a friends, and ya, da, ya, and I didn't think any more about it you know when I came home I was just thinking why were they mad at me in the first place.

Petitioner added that when the three victims arrived at her home, she and her five-year-old daughter were home alone and she feared for their safety so she grabbed a .30-06 rifle, confronted the victims outside her home, and shot them in self-defense. However, during petitioner's second statement to the police, she admitted that her husband had been the shooter and that she had stood behind him during the shooting.

Petitioner's husband was arrested late on the night of the shootings. When questioned, he told the police that, "My wife never did nothing. I shot those people. Let my wife go." He also admitted that petitioner was armed with a shotgun when he shot the victims.

On January 16, 2013, petitioner was indicted on three counts of murder in the first degree in violation of West Virginia Code § 61-2-1, one count of concealment of a deceased human body in violation of West Virginia Code § 61-2-5a, one count of conspiracy to commit murder in violation of West Virginia Code § 61-10-31, and one count of conspiracy to conceal a human body in violation of West Virginia Code § 61-10-31.

Although the murders occurred in Webster County, the trial was moved to Braxton County when attempts to seat a jury in Webster County failed. Petitioner and her husband were tried together. During a break in their five-day trial in September of 2012, the trial judge saw a juror assigned to the case, Lana Bowman, speak to one of the State's witnesses, Deputy Jack Cutlip, in the hallway of the courthouse. After the break, the judge informed the parties that,

> As I was leaving the courthouse for lunch, I observed one of our jurors—I don't even know the juror's name, having a conversation with the witness, [Deputy] Jack Cutlip. It appeared to me, just from my observations, that [Juror Bowman] initiated the conversation. I didn't hear anything other than, "Are you related to Rick Cutlip" or words to that effect and I walked up to the juror and said, "You're a juror on this case?" She said, "Yes." I said, "You're not supposed to be having any conversations with the witness." She said, "Well, we weren't talking about the case." I said, "Well, no conversations." It stopped.

The court then allowed counsel to question Deputy Cutlip and Juror Bowman. The Deputy testified as follows:

2

As I was coming down the steps, [Juror Bowman] was standing there at the wall and she asked me if my brother was Rick Cutlip. And I told her, I said, "I have a brother Rick Cutlip, but I'm not sure it's the same one." She said, "Well, he taught high school in Braxton County." I said, "That's the wrong one." And of course, that is when [the trial judge] came down the hall.

Juror Bowman testified that, "It was my fault. I asked him if he was related to Rick Cutlip because Rick is from Webster County and that's all." Juror Bowman confirmed that she and Deputy Cutlip did not "have any conversation of any nature about this case." Petitioner then moved to strike Juror Bowman from the jury. The court took the motion under advisement, and later denied it on the ground that there was no communication between the two regarding the case; the communication was initiated by the juror, not the witness; and the conversation took place in a hallway, not in a private area. Juror Bowman later became the jury foreperson.

Also during trial, the court questioned the medical examiner, who testified for the State, as follows:

THE COURT: Doctor, just for the record, your opinions here today are within a reasonable degree of medical certainty or pathological certainty; is that correct?

THE WITNESS: Yes, Your Honor

THE COURT: Okay. Which gunshot wound to Dustin Brown do you believe occurred first, the gunshot wounds from the back to the front or through the side?

THE WITNESS: The sequence of the gunshot wounds, I cannot testify to.

THE COURT: Okay.

THE WITNESS: I do not know which one was first and which one was second.

THE COURT: All right. Now, in regards to Denise Coates, the entry wound was from the back. Does that indicate that her back was towards the shooter?

THE WITNESS: This I don't know. I cannot say.

THE COURT: Well, I mean, if it's an entrance wound, the shooter's got to be somewhere behind the victim, does he not?

THE WITNESS: Could you please repeat your question of me?

THE COURT; Okay. Denise Coates had—she had two wounds?

THE WITNESS: That's correct.

THE COURT: One wound—entrance wound—

3

THE WITNESS: As a matter of fact, three wounds. One of them grazed.

THE COURT: Right. Okay. One of those wounds—entrance wounds[—]was in the back area?

THE WITNESS: That's right. In the left.

THE COURT: So it would indicate that the shooter was somewhere behind her?

THE WITNESS: That's correct.

THE COURT: And, likewise, with Dustin Brown, one of his entrance wounds was from the back area—was in the back area?

THE WITNESS: That's correct.

THE COURT: Which would indicate that the shooter was in the rear of him?

THE WITNESS: That's correct.

THE COURT: Did my question raise any questions?

DEFENSE COUNSEL: No. Your Honor,

THE COURT: May this witness be excused?

THE PROSECUTOR: He may, Your Honor,

THE COURT: Is there objection?

DEFENSE COUNSEL: No objection.

THE COURT: You're excused and free to go. Thank you very much.

The jury found petitioner guilty on three counts of voluntary manslaughter and one count of conspiracy to conceal a deceased human body. The jury acquitted petitioner on the count of conspiracy to commit murder.

The circuit court heard petitioner's post-trial motions on November 1, 2013. By order entered November 14, 2013, the circuit court denied petitioner's motion for a new trial and sentenced petitioner to fifteen years in prison for each of the three voluntary manslaughter convictions and one to five years in prison for conspiring to conceal Dustin Brown's body. The circuit court ordered that all terms be served consecutively.

Petitioner now appeals her convictions and sentences.

4

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner's initial argument is based on her claim that the State presented insufficient evidence at trial for the jury to find that she aided and abetted her husband in shooting the three victims. She therefore claims that she could not rightfully be convicted of manslaughter. This Court reviews a defendant's challenge to the sufficiency of the evidence with substantial deference to the jury's findings:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169.

Petitioner was prosecuted for murder on the theory that she was her husband's accomplice during the killings, given that she was present, armed, and ready to assist. To establish that a defendant served as an accomplice, the State must prove that the defendant "in some sort associate[d] himself with the venture, that he participate[d] in it as something that he wishe[d] to bring about, that he [sought] by [his] action to make it succeed." *State v. Harper*, 179 W.Va. 24, 28, 365 S.E.2d 69, 73 (1987) (citing Judge Learned Hand in *U.S. v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938). An accomplice may be charged as a principal. W.Va. Code § 61-11-6. Therefore, the State was not required to prove that petitioner killed the victims; instead, it was

only required to prove that she was present and aided and abetted her husband's acts, or that she advised and encouraged them. *State v. Loveless*, 140 W.Va. 875, 883, 87 S.E.2d 273, 278-79 (1955). Furthermore, "[p]roof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime." Syl. Pt. 10, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

In this case, in reviewing all the evidence in the light most favorable to the prosecution and in crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, a reasonable jury could have found that the State presented sufficient evidence at petitioner's trial for the jury to find that petitioner associated herself with her husband's crimes and an assisted in making her husband's action succeed. Such evidence included (1) petitioner's and her husband's admissions to the police that petitioner was present and armed during the shootings; (2) petitioner's attempt to help her husband conceal the crimes by attempting to conceal Dustin Brown's body; and (3) petitioner's efforts to cover-up her husband's crimes by taking responsibility for the killings. Therefore, we find no error on this ground.

Petitioner next argues that her three manslaughter convictions are inconsistent with her acquittal on the charge of conspiracy to commit murder, and her husband's murder convictions. This Court has repeatedly held that claims of inconsistency in jury verdicts are not reviewable on appeal. *See State v. Hall*, 174 W.Va. 599, 328 S.E.2d 206 (1985) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); *State v. Bartlett*, 177 W.Va. 663, 355 S.E.2d 913 (1987) ("[W]e will generally not review claims of inconsistent jury verdicts."); *State v. Hose*, 187 W.Va. 429, 419 S.E.2d 690 (1992) ("In view of the holding in *State v. Hall*, this Court cannot conclude that the apparent inconsistency of the verdicts in the present case constituted reversible error."). This rule is based on deference to the jury as the ultimate finder of fact and a reluctance of appellate courts to undermine the jury's role. *Bartlett*, 177 W.Va. at 670, 355 S.E.2d at 920. As such, we will not address the particulars of this assignment of error.

Petitioner next argues that West Virginia Code § 61-2-5a(b) prohibited the State from charging her with conspiracy to conceal a deceased human body. That section provides that

> [i]t shall be a complete defense in a prosecution pursuant to subsection (a) of this section that the defendant affirmatively brought to the attention of law enforcement within forty-eight hours of concealing the body and prior to being contacted regarding the death by law enforcement the existence and location of the concealed deceased human body.

Petitioner claims that because she timely reported to the police that Dustin Brown had been shot and killed on her property, she was immune from prosecution for the concealment of Mr. Brown's body. Based on this claim, petitioner argues that she was likewise immune from prosecution for conspiracy to conceal Mr. Brown's body.

6

West Virginia Code § 61-2-5a(b) did not prohibit the State from charging petitioner with conspiracy to conceal a deceased human body. Petitioner's indictment charged her with conspiring to conceal a deceased human body, and not with the completed act of concealment. Hence, whether petitioner had a defense to the completed act was irrelevant. The law recognizes the inherent danger in a criminal agreement: "The prohibited conduct is the agreement to commit an act made an offense by the laws of this State." *State v. Less*, 170 W.Va. 259, 265, 294 S.E.2d 62, 67 (1982). Thus, "[i]n order for the State to prove conspiracy under W.Va. Code, 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." 170 W.Va. at 261, 294 S.E.2d 63. Therefore, a defendant can be convicted of conspiracy even if the underlying act is not completed. *Id.* at 265-66, 294 S.E.2d at 67. Accordingly, in this case, petitioner could rightfully be charged with, and convicted of, conspiring to conceal a deceased body even if she had a defense to the completed act of concealment of a deceased human body. As such, there is no error.

Petitioner's next assignment of error is that the circuit court erred in failing to excuse an offending juror for misconduct and in not granting petitioner's motion for a new trial on that ground. Petitioner contends that her convictions must be overturned because the circuit court allowed Juror Bowman to remain on the jury after she had conversed with State witness Deputy Cutlip. We review petitioner's claim for an abuse of discretion. *See State v. Gilman*, 226 W.Va. 453, 462, 702 S.E.2d 276, 285 (2010).

With regard to contact between a trial witness and a juror, this Court has recognized that "there is no automatic requirement that mandates the reversal of a conviction whenever a witness for the State comes into contact with the jury." *State v. Waugh*, 221 W.Va. 50, 56, 650 S.E.2d 149, 155 (2007). Rather, all that is required "is a factual analysis that focuses on the length and degree of contact between the jury and the witness, as well as an inquiry into whether the witness provided testimony that was crucial to the conviction, or merely formal in nature." *Id.* For example, in *State v. Holland*, 178 W.Va. 744, 364 S.E.2d 535 (1987), a witness for a State, who happened to be a State trooper, had a conversation with several jurors while the parties where engaged in an in camera hearing with the court. This conversation lasted approximately five minutes and regarded local football games, deer hunting, and helicopter searches for marijuana. The trooper later testified that the defendant's case was not discussed nor was reference made to the subject of the defendant's alleged crime. The trooper also had coffee with one of the jurors on the morning of the defendant's trial, but he testified that it was before he knew who the jurors were and the case was not discussed. *Id.* at 748, 364 S.E.2d at 539. In *Holland*, we found that, despite the impropriety of these encounters, the defendant was not entitled to relief because no prejudice resulted from them. *Id.* The same holds true in the instant case. Therefore, given that the circuit court considered the factors required by *Holland*, it did not err in allowing Juror Bowman to remain on the jury panel.

Petitioner next argues that the circuit court abused its discretion and prejudiced petitioner when it questioned the medical examiner regarding whether two of the decedents were shot in the back and whether the medical examiner's opinions were made to a reasonable degree of medical certainty. This Court reviews a trial court's questioning of a witness under the abuse of

discretion standard. *See* Syl. Pt. 1, in part, *State v. Farmer*, 200 W.Va. 507, 490 S.E.2d 326 (1997).

It is axiomatic that "[a] trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case." Syl. Pt. 4, in part, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979). Moreover, "[t]he plain language of Rule 614(b) of the West Virginia Rules of Evidence authorizes trial courts to question witnesses—provided that such questioning is done in an impartial manner so as to not prejudice the parties." Syl. Pt. 3, *Farmer*, 200 W.Va. at 509, 490 S.E.2d at 327. Here, nothing in the record suggests that the circuit court abandoned its role of impartiality and neutrality when it asked the medical examiner to clarify two answers he had already given. Further, petitioner's counsel did not object to the circuit court's questions, even though the circuit court asked both parties if they had any objections to the court's discourse with the medical examiner. As such, this assignment of error must fail.

Petitioner's sixth and final assignment of error is that the circuit court erred in imposing an excessive sentence. Petitioner contends that her sentences were excessive because the State failed to present sufficient evidence to convict her and because she had no criminal history prior to these events. Petitioner's sentences were not excessive because they were within statutory limits and were not based on any impermissible factor. See Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982) ("Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."). Thus, petitioner's claim fails because she does not fall within the narrow class of defendants who are entitled to attack their statutorily-mandated sentences.

For the foregoing reasons, we affirm the circuit court November 14, 2013, order.

Affirmed.

**ISSUED:** April 24, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II